**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JON MOORE, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR VIOLATIONS OF** |
| | ) | **THE FEDERAL SECURITIES LAWS** |
| APPLIED MOLECULAR TRANSPORT INC., SHAWN CROSS, CHARLENE BANARD, TAHIR MAHMOOD, HOLLY SCHACHNER, JOHN W. SMITHER, and AARON VANDEVENDER, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Jon Moore ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Applied Molecular Transport Inc. ("Applied Molecular" or the "Company") and the members of Applied Molecular's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge the Company with Cyclo Therapeutics, Inc. ("Cyclo") (the "Proposed Transaction").

2. On September 21, 2023, Applied Molecular, Cyclo and Cyclo's wholly owned subsidiary Cameo Merger Sub, Inc. ("Merger Sub") entered into an Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Cyclo will acquire

Applied Molecular, with each share of Applied Molecular common stock converting into the right to receive a number of shares of Cyclo common stock equal to the Exchange Ratio (as defined in the Merger Agreement), estimated to be 0.174 shares of Cyclo common stock, subject to adjustment based upon Applied Molecular's net cash and outstanding shares at the closing of the Proposed Transaction.  Upon closing of the Proposed Transaction, Applied Molecular's current stockholders will own approximately 25% of the combined company and Cyclo's current stockholders will own approximately 75% of the combined company.

3. On November 21, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  Specifically, the Proxy Statement, which recommends that Applied Molecular stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Applied Molecular; (ii) the financial analyses that support the fairness opinion provided by MTS Securities, LLC ("MTS"), an affiliate of the Company's financial advisor, MTS Health Partners, L.P. ("MTS Partners"); and (iii) the background of the Proposed Transaction.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Applied Molecular stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Applied Molecular stockholders to vote on the Proposed Transaction is currently scheduled for December 26, 2023.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Applied Molecular's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Applied Molecular common stock.

10. Defendant Applied Molecular, a Delaware corporation, is a fully-remote company that does not have a principal executive office. Applied Molecular's shares trade on the Nasdaq Capital Market under the ticker symbol "AMTI."

11. Defendant Shawn Cross has been Chief Executive Officer, Chair of the Board and a director of the Company at all relevant times.

12. Defendant Charlene Banard has been a director of the Company at all relevant times.

3

13. Defendant Tahir Mahmood has been a director of the Company at all relevant times and previously served as the Company's Chief Executive Officer.

14. Defendant Holly Schachner has been Lead Independent Director of the Company at all relevant times.

15. Defendant John W. Smither has been a director of the Company at all relevant times.

16. Defendant Aaron VanDevender has been a director of the Company at all relevant times.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

18. Applied Molecular is a clinical-stage biopharmaceutical company that was previously engaged in the design and development of a pipeline of oral biologic product candidates to treat autoimmune, inflammatory, metabolic, and other diseases. Applied Molecular has discontinued research activities on its product candidates. The Company has a proprietary technology platform that enables the design of novel biologic product candidates in patient-friendly oral dosage forms.

### The Proposed Transaction

19. On September 21, 2023, Applied Molecular announced that it had entered into the Proposed Transaction, stating, in relevant part:

> GAINESVILLE, Fla. & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)--Cyclo Therapeutics, Inc. (Nasdaq: CYTH) ("Cyclo Therapeutics" or the "Company"), a clinical stage biotechnology company focused on developing transformative therapies for rare and neurological diseases with limited treatment

4

options, and Applied Molecular Transport Inc. (Nasdaq: AMTI) ("AMT"), a biopharmaceutical company, announced today that the companies have entered into a definitive agreement (the Merger Agreement) pursuant to which AMT will merge with Cyclo Therapeutics in an all-stock transaction (the Merger). Following the closing of the Merger, the combined company will operate under the name "Cyclo Therapeutics, Inc." and will continue trading on The Nasdaq Capital Market under the ticker symbol "CYTH." The combined company will focus on advancing Cyclo Therapeutics' pivotal Phase 3 global study (TransportNPC™) evaluating Trappsol® Cyclo™ for Niemann-Pick Disease Type C1 (NPC1). The transaction is currently expected to close in the fourth quarter of 2023.

"We are extremely pleased to enter into this merger agreement with Applied Molecular Transport," commented N. Scott Fine, CEO of Cyclo Therapeutics. "Our Board and leadership team believe this will be a transformational transaction that will be beneficial to all of our stakeholders in the near and long term. Importantly, this transaction bolsters our cash position to complete our Phase 3 study and support operations through the regulatory submission process, assuming a successful outcome in our pivotal study. We remain dedicated to bringing our NPC global pivotal program, which is on track to complete enrollment by the end of 2023, across the finish line towards approval. We will be working in earnest to close this exciting and strategic transaction."

Shawn Cross, CEO of AMT added, "Following an extensive and thorough strategic review process, we view this merger with Cyclo Therapeutics as the best path forward for AMT shareholders given the promise and potential of its late-stage program in NPC1. We are encouraged by the progress shown in this important program and Cyclo Therapeutics' long-standing support of NPC1 patients and their families in its compassionate use program. Cyclo Therapeutics has continued to demonstrate its commitment to developing life-changing medicines and execution across clinical and regulatory fronts. Our board and management believe the company is well positioned to unlock significant value and successfully advance Trappsol® Cyclo™ through the on-going pivotal trial and ultimately to approval with the goal of providing a safe, convenient and effective alternative for people who are living with a debilitating disease."

**About the Proposed Transaction**

Under the terms of the Merger Agreement, AMT stockholders will receive approximately 0.174 shares of Cyclo Therapeutics in exchange for each of their shares in AMT (subject to adjustment based on AMT's net cash at closing). Cyclo Therapeutics expects to issue approximately 7.624 million shares of Cyclo Therapeutics' common stock to AMT shareholders, equating to approximately 25% of the combined company on a fully diluted basis.

The combined company will be led by the existing Cyclo Therapeutics management team and will be headquartered in Gainesville, FL. Subsequent to the closing of the

>transaction, Shawn Cross, Chief Executive Officer and Board Chair of AMT will be appointed to the Cyclo Therapeutics Board of Directors.
>
>The Merger has been approved by the board of directors of each company and is currently expected to close in the fourth quarter of 2023, subject to the satisfaction or waiver of customary conditions, including the requisite approval by Cyclo Therapeutics' and AMT's stockholders and the effectiveness of a registration statement on Form S-4 to register the shares of Cyclo Therapeutics common stock to be issued in connection with the transaction. As the transaction proceeds, the parties will publicly disclose required information either through press releases or filings with the Securities and Exchange Commission (the "SEC"), as appropriate.
>
>MTS Health Partners, L.P. is acting as financial advisor to AMT in connection with the transaction.  Fox Rothschild LLP is serving as legal advisor to Cyclo Therapeutics and Wilson Sonsini Goodrich & Rosati, P.C. is serving as legal advisor to AMT.

**The Materially Incomplete and Misleading Proxy Statement**

20. On November 21, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Applied Molecular stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Applied Molecular; (ii) MTS' financial analyses; and (iii) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Applied Molecular*

21. The Proxy Statement fails to disclose material information concerning the financial projections for Applied Molecular.

22. For example, according to the Proxy Statement, in connection with its review and analyses for rendering its fairness opinion, MTS "reviewed certain internal financial analyses and forecasts relating to AMTI's business prepared by and provided to MTS Securities by the management of AMTI[.]" Proxy Statement at 125. Yet, the Proxy Statement fails to disclose a

summary of any financial forecasts for Applied Molecular, including the financial projections provided to and relied upon by MTS.

23. The Proxy Statement further fails to disclose a summary of any liquidation analysis of the Company performed by Applied Molecular management and provided to the Board during the process leading to the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning MTS' Financial Analyses*

24. The Proxy Statement fails to disclose material information concerning MTS' financial analyses.

25. With respect to MTS' *Discounted Cash Flow Analysis* of Cyclo, the Proxy Statement fails to disclose a quantification of: (i) any terminal values for Cyclo, to the extent calculated by MTS; (ii) the inputs and assumptions underlying the discount rates ranging from 15% to 19%; and (iii) Cyclo's fully diluted outstanding shares.

26. With respect to MTS' *Selected Public Trading Analysis* and *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies and transactions analyzed, respectively.

27. With respect to MTS' *Pro Forma Combination Analysis and Intrinsic Value of Merger Consideration ("Has-Gets" Analysis)*, the Proxy Statement fails to disclose the projected synergies and assumed pro forma capital structure, each as provided by Applied Molecular management as of September 18, 2023, utilized by MTS in the analysis.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

28. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

29. Specifically, the Proxy Statement fails to disclose whether the "customary standstill provisions" included in the non-disclosure agreements the Company executed with active parties in connection with the auction process to identify potential purchasers of Applied Molecular's manufacturing assets were "don't ask, don't waive" standstill provisions that are still in effect and currently prevent any of these parties from submitting a topping bid for the Company. *See id.* at 106.

30. Moreover, the Proxy Statement fails to disclose material information concerning MTS Partners' simultaneous engagement by Cyclo and Applied Molecular. According to the Proxy Statement, "[o]n February 10, 2023, Cyclo entered into an engagement letter with MTS [Partners] to assist in identifying potential licensing, merger and other strategic opportunities." *Id.* at 107. MTS Partners continued to work with Cyclo until July 2023, and its engagement was not officially terminated until September 14, 2023. *See id.*

31. Applied Molecular had previously engaged MTS Partners on November 14, 2022, in connection with divesting Applied Molecular's manufacturing assets. *Id.* at 106. Then, on February 21, 2023, shortly after the commencement of MTS Partners' engagement with Cyclo, Applied Molecular amended its engagement letter with MTS Partners to include a potential strategic transaction of the entire company. *Id.* at 108. The next day, on February 22, 2023, Applied Molecular and Cyclo entered into a mutual confidentiality agreement. *Id.* Yet, MTS Partners did not inform Applied Molecular or the Board of its engagement by Cyclo until February 27, 2023. *Id.* at 107. In light of this, the Proxy Statement fails to disclose how Applied Molecular and Cyclo were first introduced and the details of all discussions and communications prior to the parties' entry into a confidentiality agreement on February 22, 2023. To the extent MTS Partners

8

introduced the parties, the Proxy Statement further fails to disclose whether MTS Partners was working on behalf of Applied Molecular or Cyclo at the time the introduction was made.

32. Moreover, throughout the entirety of the process, MTS Partners was engaged by both Cyclo and Applied Molecular. Although the Proxy Statement alleges Cyclo's engagement with MTS Partners ended in July 2023, it was not terminated until September 14, 2023 – mere days prior to the execution of the Merger Agreement – and it does not appear Cyclo engaged an alternative financial advisor in the interim. Despite MTS Partners' involvement in the negotiations between Applied Molecular and Cyclo, the Proxy Statement fails to disclose any safeguards the Board, Applied Molecular or MTS Partners put into place to safeguard against any potential conflicts of interest, including whether any members of the MTS Partners team involved with the Applied Molecular engagement were also involved with the Cyclo engagement. The Proxy Statement further fails to disclose whether, in connection with its engagement by Cyclo, MTS Partners identified Applied Molecular as a potential strategic partner for Cyclo, advised Cyclo on any potential terms of a strategic transaction with Applied Molecular, or advised Cyclo with respect to any of the letters of intent Cyclo submitted to Applied Molecular during the process leading up to the Proposed Transaction.

33. In sum, the omission of the above-referenced information renders statements in the "Opinion of Financial Advisor to AMTI" and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Applied Molecular will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Applied Molecular**

34. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

35. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Applied Molecular is liable as the issuer of these statements.

36. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

37. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

39. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

40. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Applied Molecular within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Applied Molecular and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

46. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Applied Molecular, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 5, 2023

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

13